UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KEITH ALAN OGBURN,<br><br>               Petitioner,<br><br>  v.<br><br>TIM WENGLER and IDAHO ATTORNEY GENERAL LAWRENCE WASDEN,<br><br>               Respondents. | Case No. 1:12-cv-00290-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

      The parties are familiar with the facts of this case as set forth in the Court's Memorandum Decision and Order entered on August 27, 2013, in which the Court denied Keith Alan Ogburn's Petition for Writ of Habeas Corpus and dismissed this action with prejudice. (Dkt. 20.) Petitioner has filed a Motion to Alter or Amend the Judgment under Federal Rule of Civil Procedure 59(e). (Dkt. 23.) For the reasons that follow, the Court will deny the Motion.

**1.**      **Standard of Law**

      Reconsideration of a final judgment under Rule 59(e) is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (internal quotation marks omitted). A losing party may not use a Rule 59(e) motion to relitigate old matters or to

**MEMORANDUM DECISION AND ORDER - 1**

raise arguments that could have been raised before the entry of judgment. *Sch. Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). As a result, there are four limited grounds upon which a motion for reconsideration may be granted: (1) the motion is necessary to correct manifest errors of fact or law; (2) the moving party presents newly discovered evidence; (3) reconsideration is necessary to prevent manifest injustice; or (4) there is an intervening change in the law. *Turner v. Burlington N. Santa Fe R.R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003).

2.  Discussion

In denying the Petition, the Court determined, under de novo review, that Petitioner could not show that he suffered prejudice, as required by *Strickland v. Washington*, 466 U.S. 668 (1984), from the allegedly deficient performance of trial counsel.[1] (Dkt. 20 at 25.) Petitioner takes issue primarily with the following portion of the Court's analysis:

> None of the potential witnesses could testify as to the precise time Petitioner left the graduation ceremony, and only Ms. Maestas [Petitioner's girlfriend] estimated the time with any degree of certainty. According to Ms. Maestas, when she and Petitioner left the ceremony together it "[h]ad to be close to 10:00 p.m.," after which they had a 20 to 30 minute argument. (State's Lodging C-4, p. 106.) If that testimony is accurate, Petitioner could not have participated in the crimes, which took place around 10:00. However, because Ms. Maestas was Petitioner's girlfriend at the time, the jury would have viewed her testimony with a healthy degree of skepticism—as they

---

[1] The Court assumed, without deciding, that counsel performed deficiently. (Dkt. 20 at 25.)

**MEMORANDUM DECISION AND ORDER - 2**

> would the testimony of Petitioner's family. Moreover, Ms.
> Maestas herself stated she was not paying particular attention
> to the time. Ms. Maestas's roommate testified that, although
> she did not know exactly what time Petitioner and his
> girlfriend came back from the graduation ceremony, she
> believed it was closer to 9:00 or 9:30, which would have
> allowed Petitioner time to participate in the robbery. Given
> the choice between Petitioner's girlfriend and her roommate,
> particularly with all of the other evidence against Petitioner,
> the jury would have been much more likely to believe the
> roommate.

(*Id*. at 25-26.)

Petitioner points to the testimony of Carol Fitzgerald, who was at the graduation ceremony and reception but left while Petitioner was still there. (Memo. in Supp., Dkt. 23-1, at 5-7.) Ms. Fitzgerald initially testified at the evidentiary hearing that she left the graduation sometime after 9:00. (State's Lodging C-4 at 92.) She later stated that "it was at least 9:30." (*Id*. at 93.) Ms. Fitzgerald stated that she did not know when Petitioner left, but that "he was there through the ceremony and at least for a few minutes after the ceremony." (*Id*. at 93, 96.)

As can be seen from this testimony, Ms. Fitzgerald could not be certain of the time Petitioner left the ceremony and reception, but she did say that it must have been sometime between 9:00 and "at least 9:30" because he was still there when she left. However, this testimony does not place Petitioner at the graduation at 10:00 p.m., the time of the robbery. It is consistent with the testimony of Ms. Maestas's roommate, who testified that Petitioner and his girlfriend came back to the residence "about 9:00, 9:30 or

**MEMORANDUM DECISION AND ORDER - 3**

so." (State's Lodging C-4 at 158.)

Thus, as noted by the Court, Petitioner still would have had time to meet up with his co-defendants and commit the robbery for which he was convicted. And the jury—even if it had heard from Ms. Fitzgerald—would most likely still have voted to convict considering the circumstances surrounding Petitioner's arrest:

> Petitioner was found lying in a field close to where the fleeing suspects had crashed into the irrigation canal, and his two co-defendants (one of whom was wearing a blue bandanna exactly like the one worn by one of the robbers) were found nearby. Petitioner's clothes were wet and muddy, as if he had recently been in the water, but there was no standing water in the field where he was found. Petitioner's claim that his ankles and shins got "a little wet" when he stepped in a ditch on his way to the field would not have helped him; it was contrary to the evidence at trial. The odds that Petitioner just ended up in the same area, at the same time, as two people he knew who were there for different reasons—all of them wet from the waist down and close to a location where three fleeing robbery suspects had crashed their car into an irrigation canal—are close to zero.

(Dkt. 20 at 26.)

In addition, Special Agent Greg Johanson with the Bureau of Alcohol, Tobacco, Firearms, and Explosives testified before the grand jury—and at the postconviction evidentiary hearing—that Petitioner had confessed his involvement in the robbery during Johanson's investigation into a separate crime. (State's Lodging C-4 at 8-12.) Though the prosecution did not call Johanson at trial, it almost certainly would have called him in

**MEMORANDUM DECISION AND ORDER - 4**

rebuttal if Petitioner had presented an alibi defense.[2]

Finally, Petitioner claims that he did not know his co-defendants at all and attacks the Court's analysis on that basis. However, there is evidence in the record that prior to his arrest Petitioner in fact did know the other two men involved in the robbery. First, the girlfriend of one of the men stated that the men knew each other, though Petitioner attacks her credibility and the methods used by police in speaking with her. (Reply, Dkt. 25, at 3). Second, there is Petitioner's confession to Special Agent Johanson, whose testimony Petitioner has failed to discredit. Petitioner obviously knew the men—at least at some level—if he participated in a robbery with them.

## CONCLUSION

Petitioner did not show a reasonable possibility that the outcome of his trial would have been different if counsel had pursued an alibi defense, and nothing he has presented in the instant Motion meets the high standard required for relief under Rule 59(e). Petitioner has not carried his burden to show a clear error of law or fact, manifest injustice, or any other basis for reconsideration. Accordingly, the Court will deny Petitioner's Rule 59(e) Motion.

---

[2] Petitioner contends that the alleged confession obtained by Special Agent Johanson "occurred after Petitioner's invocation [of his right to remain silent] and before the appointment of counsel" and that, therefore, the prosecution could not have used it unless Petitioner testified on his own behalf. (Reply at 5-7.) However, Petitioner has not raised a claim of a Fifth Amendment violation in these proceedings. In the absence of such a claim, the Court will not speculate about the prosecution's decision not to call Johanson.

**MEMORANDUM DECISION AND ORDER - 5**

## ORDER

**IT IS ORDERED** that Petitioner's Motion for Reconsideration (Dkt. 23) is DENIED.



DATED:  **March 12, 2014**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 6**